### FOPPES *et al. v.* MAGONE, Collector.

(<em>Circuit Court, S. D. New York.</em> December 4, 1889.)

**1. CUSTOMS DUTIES—CLASSIFICATION—RATTAN REEDS.**
> Rattan, from which the outer bark or enamel ("chair cane") has been cut by a first process from the raw material, leaving a product known in trade and commerce in the United States at the time of the passage of the tariff act of March 3, 1883, as "round reeds," are duty free, under that act. "Free-List," (Tariff Index, new, 770,) "Rattans and reeds, unmanufactured."

**2. SAME.**
> The articles known in trade and commerce at the same date as "square reeds," "oval reeds," and "flat reeds," being obtained by a further process of cutting from the "round reeds," above described, are liable to duty under the provision of said act, (Id. 482,) Schedule N, "Sundries," "Rattans and reeds, manufactured, but not made up into completed articles, ten per centum *ad valorem.*"

At Law. Action to recover back customs duties.

The articles involved in the suit were imported by the plaintiffs from Germany into the port of New York in 1887 and 1888, and were assessed for duty by the collector at 10 per centum *ad valorem*, under tariff act of March 3, 1883, Schedule N, "Sundries," (Tariff Index, new, 482,) as "rattans and reeds, manufactured, but not made up into completed articles." The plaintiffs protested, claiming that the goods were duty free under the same act, "Free List," (Id. 770,) and brought this action to recover the amount of the duties paid. Rattan was shown to be the stem of a plant grown in the East Indies, of solid, tough, fiber, and of various lengths. It was proved by witnesses on the trial that the raw rattan was submitted to a mechanical process by which the outer bark or enamel was cut off in strips. This bark or enamel, thus produced, was called in the trade "chair cane." The inner core or pith of the rattan, which remained in a cylindrical form after the first process of cutting, was generally known in the trade, at and for some time prior to the passage of the act of 1883, as "round reed." It was the crudest form in which such "reeds" were known to the trade dealing in them. Defendant's witnesses proved that the article known as "square reed" might be obtained by a first process of cutting from the raw rattan, or might be made by squaring the "round reed," by a second process of cutting with knives operated by machinery; that the "oval reed" was always produced from the "round reed" by a second process of manufacture or cutting; and that the "flat reed" was invariably the product

or a second process of cutting, either from the "square reed" or from the "round reed." The samples offered in evidence, and the testimony, proved that the plaintiffs' importations were such "round," "square," "oval," and "flat reeds." All these varieties of "reeds" were used in certain manufactures in the United States without any further process being applied to them than cutting into proper lengths. In other manufactures the "reeds" were bleached and trimmed before being made into completed articles.

Defendant's counsel moved the court to direct a verdict for the defendant on the grounds—*First.* That the articles in question were "rattans manufactured," and not "reeds," according to the meaning of that word in the English language, viz., natural aquatic grasses, with hollow, jointed stems. *Second.* That if they were known in the trade as "reeds," still the evidence showed that they were manufactured, and not a natural product or raw material, and in either case were dutiable at 10 per centum *ad valorem*, and cited *Stockwell* v. *U. S.*, 3 Cliff. 284; *King* v. *Smith*, 4 Chi. Leg. N. 281; *U. S.* v. *Four Cases of Cutlery*, 1 Hunt, Mer. Mag. 167; *Lawrence* v. *Allen*, 7 How. 793. Plaintiffs' counsel moved the court to direct a verdict for the plaintiffs; relying chiefly upon *Hartranft* v. *Wiegmann*, 121 U. S. 609, 7 Sup. Ct. Rep. 1240, and cases therein cited.

*Hartley & Coleman*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally*.) The two provisions of the tariff with which we are concerned in this case are paragraphs 482 and 770. The first of these is as follows: "Rattans and reeds, manufactured, but not made up into completed articles, ten per centum, *ad valorem*." The second provides that "rattans and reeds, unmanufactured," shall be exempt from duty. What the rattan is, we know by the testimony of the witnesses, and by the Exhibit S, "Rattans," introduced in this case. In its natural condition, it comes here free. When manufactured, it pays a duty of 10 per centum. It appears that when this rattan is taken and cut with certain knives, used, apparently, by means of a machine, the hard outer rind or enamel is cut through and stripped off. In the condition to which the rattan is thus reduced, both what is stripped off the outside and what is left after the stripping is completed would be "rattans, manufactured." If the statute provided, therefore, only for "rattans, unmanufactured," free, and "rattans, manufactured," 10 per cent. duty, the importations here would pay a duty. It appears, however, that the core or central part of the rattan, which is left after the stripping, is known in trade and commerce, and was for many years prior to the passage of the act of 1883 well known in trade and commerce, as a "reed." Upon that point there is no dispute on the testimony. It appears, then, that when the rattan has gone through this first transformation there is left the external rind, cut into narrow strips, and the inner core, which is commercially a "reed," and which, therefore, must be taken to be a reed,

within the meaning of the tariff act. With it as a reed, then, we are concerned. If it is a reed, unmanufactured, it comes in free; if a reed, manufactured, it should pay 10 per cent. duty. Now, the central core, or round reed, (a sample of which has been marked "S—Round,") is in the same condition in which nature produced it, except that the outer covering or enamel, which made it a rattan, has been stripped off. Nothing other or different has been done to it than that. In other words, it is one of the products of the first process of manufacture to which the rattan is subjected; and when that first process is completed, and this product, the reed, is produced, it is a reed, pure and simple, and in the first condition in which a reed, as such, is known to the tariff. I cannot see, therefore, that the round reeds can fairly be held to be "reeds, manufactured."

With regard to the oval reeds, it appears, moreover, that they are produced from the round reeds by a second step in the process, in which new machinery is introduced, and by which these oval slabs or strips are cut off. In like manner the flat reed is produced, by a second step or process, (and perhaps, in certain instances, even by a third step or process,) from the round reed; in some instances being cut directly from the round reed, and in others the round reed being first reduced to a square reed, and the flat strips then cut off from the square reed. Those two varieties of reeds seem, therefore, to be "reeds, manufactured."

The plaintiffs contend that the decision of the supreme court in the *Hartranft Case*, 121 U. S. 609, 7 Sup. Ct. Rep. 1240, should control this court in the case at bar, and that it requires that all the varieties of reed which are introduced here should be classed as unmanufactured. No doubt the *Hartranft Case* does lay down the rule that, to constitute a "manufacture," there must be a transformation; that mere labor bestowed upon an article, even if that labor is applied through machinery, will not make it a manufacture, unless it has progressed so far that a transformation ensues, and the article becomes commercially known as another and different article from that as which it began its existence. However valuable the *Hartranft Case* may be as a rule of general application, it does not apply to the case at bar, for the reason that congress has provided, in paragraph 482, that "rattans and reeds, manufactured, but not made up into completed articles," shall pay 10 per centum *ad valorem*. Congress, therefore, contemplated that when this transformation was made, when the manufacture had progressed so far that what the supreme court contemplated in the *Hartranft Case* had really happened, that then the article should disappear from this paragraph entirely, and be found elsewhere in some other paragraph. It seems plainly to have contemplated that paragraph 482 should cover rattans and reeds in the various steps of the progressive processes of improvement to which they might be put subsequent to their appearance as a raw material.

There remains, then, for consideration only the square reed. The testimony is to the effect that it can be produced in either of two ways,—one, by cutting it out of the original rattan; and the other, by cutting it from the round reed, which has been itself produced from the original rattan.

The first method is a single process; the second, a double process. If pro-
duced under the first method, it might be fairly classed with the round
reeds, as being an unmanufactured article; if by the second process, it
should more properly be classed with the flat and oval reeds, as being the
product of a double process, and therefore a "reed, manufactured." There
is no testimony showing how these particular imported reeds were man-
ufactured; but all presumptions are in favor of the correctness of the col-
lector's action; and the burden of satisfying the court and jury as to how
they are produced undoubtedly rested upon the plaintiffs. In the ab-
sence of any affirmative evidence, therefore, I feel constrained to hold
that they are produced in the way in which it must be assumed the col-
lector held they were, to-wit, by a double process. Verdict directed in
favor of the plaintiffs for the round reeds only.