# CASES ADJUDGED IN THE UNITED STATES COURT OF CUSTOMS APPEALS.[1]

RATTAN & CANE Co. v. UNITED STATES (No. 1437). UNITED STATES v. RATTAN & CANE Co. (No. 1442).[2]

1. CHAIR CANE OR REEDS MANUFACTURED FROM RATTAN.

The provision in paragraph 212, tariff act of 1909, for "chair cane or reeds wrought or manufactured from rattans or reeds" is more specific than the free-list provision for "reeds unmanufactured," and the clause applies to chair reeds made from rattans or other reeds, whatever their shape, and regardless of whether they are made by the first stripping of the rattan or by a subsequent reduction of stripped reeds.

2. RATTAN SLABS AND BROOM OR SPLIT RATTAN.

The slab rattan and the broom or split rattan of the importation are used only in the manufacture of brooms and never in the manufacture of chairs. They did not fall within paragraph 212 of the act, but were entitled to free entry as rattan unmanufactured.

United States Court of Customs Appeals, March 18, 1915.

CROSS APPEALS from Board of United States General Appraisers, Abstract 36027 (T. D. 34609).

[Affirmed.]

*B. A. Levett* for Rattan & Cane Co.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of certain round reeds under 7 millimeters in diameter, also certain slab and broom or split rattan imported under the tariff act of 1909. The appeal originally included certain binding cane known as "D" binding, but that assignment has been formally waived of record in this court.

The merchandise in question was assessed with duty at the rate of 10 per cent ad valorem under the provision for "chair cane or reeds wrought or manufactured from rattans or reeds" contained in paragraph 212 of the act of 1909.

[1] Cases decided prior to November 19, 1915, reported by Thos. H. Clark, deceased; those decided on that date, by the court.
[2] Reported in T. D. 35247 (28 Treas. Dec., 448).

The importers protested against the assessment, claiming free entry for the merchandise under the provision for rattan and reeds unmanufactured and in the rough contained in paragraph 713 of the act.

The protest was submitted upon evidence to the Board of General Appraisers, who held that the round reeds in question were dutiable as assessed, but that the slab rattan and the broom or split rattan were entitled to free entry as claimed in the protest. The Government and the importers, respectively, have filed cross appeals in this court challenging the correctness of the board's decision.

The following is a copy of the pertinent parts of the two paragraphs above cited:

212. Chair cane or reeds wrought or manufactured from rattans or reeds, ten per centum ad valorem; * * *.

713. * * * Bamboo, rattan, reeds unmanufactured, india malacca joints, and other woods not specially provided for in this section, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

As is stated above, the merchandise in question consists of three classes of articles, namely, round reeds, rattan slabs, and broom or split rattan. The first of these were held to be dutiable by the board, the others free. It appears from the testimony that the articles so named are all produced from the long, flexible stems of the rattan; that these stems are composed of a tough, woody core and an outer bark or rind resembling enamel; that the crude rattan stems are mechanically forced lengthwise through a round metal cutter, which strips or peels off the enamel in uniform slivers, leaving the woody core in the form of a round rod. In the trade nomenclature this round, woody rod is called a reed. The round reeds which are thus produced by the first stripping are sometimes in turn drawn through smaller cutters, and are thereby cut lengthwise into smaller rods of oval, square, flat, or round shapes. None but round reeds are produced at the first stripping of the rattan, the flat, oval, and square reeds being always the product of a second cutting, which second cutting also at times produces smaller round reeds. These different cuts are all called reeds by the trade and are all used to a greater or less extent in the manufacture of chairs, baby carriages, and other articles. The slivers of enamel which are split or peeled from the rattan by the first operation make up the rattan slabs and the broom or split rattan. As already stated, the present appeal involves the round reeds, the rattan slabs, and the broom or split rattan.

It becomes important in this case to review the earlier enactments concerning rattans and reeds; therefore some of them are here copied for reference.

*Act of 1883.*

Par. 482. Rattans and reeds, manufactured, but not made up into completed articles, ten per centum ad valorem.

Par. 770 (free list). Rattans and reeds, unmanufactured.

*Act of 1890.*

Par. 229. Chair cane, or reeds wrought or manufactured from rattans or reeds, and whether round, square, or in any other shape, ten per centum ad valorem.

Par. 756 (free list). * * * Rattan unmanufactured; * * * reeds, * * * in the rough, or not further manufactured than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, or walking canes; * * *.

*Act of 1894.*

Par. 179. * * * Chair cane, or reeds, wrought or manufactured from rattans or reeds, ten per centum ad valorem.

Par. 684 (free list). * * * Rattan unmanufactured; * * * reeds, * * * in the rough, or not further manufactured than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, or walking canes; * * *.

*Act of 1897.*

Par. 206. Chair cane or reeds, wrought or manufactured from rattans or reeds, ten per centum ad valorem; * * *.

Par. 700 (free list). * * * Rattan, reeds unmanufactured, * * * in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

It will be observed that the tariff act of 1883 imposed a duty of 10 per cent ad valorem upon "rattans and reeds, manufactured, but not made up into completed articles," and granted free entry to "rattans and reeds, unmanufactured." This provision was construed and applied by the Circuit Court, Southern District of New York, in the case of Foppes *et al. v.* Magone (40 Fed., 570), wherein the court said:

LACOMBE, Judge (orally): The two provisions of the tariff with which we are concerned in this case are paragraphs 482 and 770. The first of these is as follows: "Rattans and reeds, manufactured, but not made up into completed articles, ten per centum ad valorem." The second provides that "rattans and reeds, unmanufactured," shall be exempt from duty. What the rattan is, we know by the testimony of the witnesses and by the Exhibit S, "rattans," introduced in this case. * * *

It appears, then, that when the rattan has gone through this first transformation there is left the external rind, cut into narrow strips, and the inner core, which is commercially a "reed," and which, therefore, must be taken to be a reed within the meaning of the tariff act. With it as a reed, then, we are concerned. If it is a reed, unmanufactured, it comes in free; if a reed, manufactured, it should pay 10 per cent duty. Now, the central core. or round reed (a sample of which has been marked "S, round"), is in the same condition in which nature produced it, except that the outer covering or enamel, which made it a rattan, has been stripped off. Nothing other or different has been done to it than that. In other words, it is one of the products of the first process of manufacture to which the rattan is subjected; and when that first process is completed, and this product, the reed, is produced, it is a reed,

pure and simple, and in the first condition in which a reed, as such, is known to the tariff. I can not see, therefore, that the round reeds can fairly be held to be "reeds, manufactured."

With regard to the oval reeds, it appears, moreover, that they are produced from the round reeds by a second step in the process, in which new machinery is introduced, and by which these oval slabs or strips are cut off. In like manner the flat reed is produced, by a second step or process (and perhaps, in certain instances, even by a third step or process), from the round reed; in some instances being cut directly from the round reed, and in others the round reed being first reduced to a square reed, and the flat strips then cut off from the square reed. Those two varieties of reeds seem, therefore, to be "reeds, manufactured."

The court therefore held the round reeds to be entitled to free entry as unmanufactured reeds, and the flat, oval, and square reeds to be dutiable as reeds manufactured. The Treasury Department acquiesced in this interpretation of the enactment of 1883 (T. D. 9779), and this continued to be the law until the tariff revision of 1890.

At the revision of 1890 Congress omitted the dutiable provision for "rattans and reeds, manufactured," and substituted therefor a provision for "chair cane, or reeds, wrought or manufactured from rattans or reeds, and whether round, square, or in any other shape." (See copies, *supra*.) It must be assumed that this radical change in the law was made with reference to the Foppes decision, *supra*, and the departmental practice conformable thereto, and it seems clear that Congress intended by the change to bring all such round reeds of the Foppes case as were chair reeds within the same dutiable classification as the flat, square, and oval chair reeds of that case. This conclusion is strongly favored by the particularity of the specifications concerning the shapes of the reeds, that being the concrete dividing line presented by the Foppes decision. It also appears that the descriptive clause "wrought or manufactured from rattans or reeds," when read in the light of the Foppes decision, was plainly designed to cover all such chair reeds as were made or produced either from rattans by the first stripping or from reeds by a subsequent operation. In this construction the terms "manufactured from rattans" relate only to the origin of the reeds and do not signify an advancement in condition after they have come to their first estate.

The view just advanced was early adopted by the Board of General Appraisers in the Gerdau case, G. A. 761 (T. D. 11586), wherein General Appraiser Wilkinson said:

Paragraph 229 provides for "chair cane, or reeds, wrought or manufactured, from rattans or reeds." We are of the opinion that the correct construction of this paragraph is "chair canes or chair reeds," for any other rendering would lead to such absurd phraseology as "reeds wrought or manufactured from reeds." As the rattans in question are not chair canes or reeds, the classification under paragraph 229 was erroneous.

The foregoing construction of the relevant provision was not uniformly followed by the board or the courts; nevertheless we think it the correct one. There have been so many decisions and departmental instructions upon this subject that it is impracticable to comment upon them separately, and it must be conceded that they have not been uniform in character. Most of them, however, are here cited for convenience of reference: Treasury letter (T. D. 8760); Foppes case (40 Fed., 570); Treasury letter (T. D. 9779); Gerdau case, G. A. 761 (T. D. 11586); Hung case, G. A. 1532 (T. D. 12981); Benneche case, G. A. 1665 (T. D. 13244), affirmed by Circuit Court; Foppes case (56 Fed., 817); Quackenbush case, G. A. 2266 (T. D. 14382); Foppes case (154 Fed., 866); Witte case, G. A. 3924 (T. D. 18167); Treasury letter (T. D. 18545); Treasury letter (T. D. 18582); Gerdau case, G. A. 4116 (T. D. 19195); Foppes case (99 Fed., 558); Knauth case, G. A. 4780 (T. D. 22533); Haase case, G. A. 4791 (T. D. 22576); Brauss case (120 Fed., 1017); Jacobson case, Abstract 30465 (T. D. 32943); Winter & Smillie case, Abstract 32085 (T. D. 33362); United States *v.* Winter & Smillie (4 Ct. Cust. Appls., 522; T. D. 33939).

It will be noted from the tariff paragraphs above copied that the terms of paragraph 229 of the act of 1890 have been literally adopted in the revisions of 1894, 1897, and 1909, except for the omission of the phrase, "whether round, square, or in any other shape." Upon a comparison of these enactments the court concludes that the reeds provided for by paragraph 212 of the act of 1909 are chair reeds which have been made from rattans or other reeds, whatever their shape, and regardless of whether they are made by the first stripping of the rattan or by a subsequent reduction of reeds already stripped. This conclusion (so far as applicable) was stated by this court in the case of United States *v.* Winter & Smillie (4 Ct. Cust. Appls., 522; T. D. 33939), wherein Montgomery, Presiding Judge, speaking for the court, said:

> The provision of paragraph 212 for chair cane or reeds wrought or manufactured from rattans or reeds, as it was very aptly stated in the opinion of Wilkinson, General Appraiser, first above quoted, can not be given full force without restricting it to chair cane or chair reeds. The chair reeds when wrought or manufactured from rattans or reeds were made subject to a duty of 10 per cent ad valorem. But only when so wrought, and only when wrought to a condition which properly designated them as chair reeds.

The foregoing conclusion does not ignore the fact that many round chair reeds are the product of the first stripping operation and would therefore fall within the definition of "reeds unmanufactured," as given by Lacombe, Judge, in the Foppes case, *supra*. Nor does the court overlook the provision for "reeds unmanufactured" in the free list of the act of 1909. It is apparent, however, that the dutiable provision for "chair reeds" is more specific than the free-list pro-

vision for "reeds unmanufactured," and should govern any importation which may be susceptible of both descriptions. It may also be noted that there are. importations of unmanufactured round reeds such as are not capable of use in the manufacture of chairs. The reeds involved in the Winter & Smillie case, *supra*, belonged to this kind, they being Chinese reeds suitable only to be made into brooms.

The question next arises whether the round reeds herein involved are chair reeds, and this must be ascertained from the testimony. Upon this question the court accepts the testimony of witness Cleaveland, notwithstanding the fact that it is partly contradicted (as well as partly sustained) by the testimony of the witnesses. Warnecke, Sievert, Huselrath, and Solomon. The following extracts are taken from the testimony of Mr. Cleaveland:

Q. (By Mr. LAWRENCE.) You are employed by the Haywood Bros. & Wakefield Co., of Wakefield, Mass.?—A. Yes, sir.

Q. What is the business of that company?—A. Importation of rattan, splitting it into chair cane, into reeds, manufacture of reed furniture, baby carriages.

Q. Is your concern largely employed in the manufacture of this line of goods?—A. Largely employed in the manufacture of the products of rattan, that is, the making of cane, and also very largely employed in the manufacture of those articles further into furniture and chairs, baby carriages.

Q. Having regard to your line of business, are you one of the largest concerns engaged in this work?—A. We think we are.

Mr. LEVETT. I will concede it.

Q. Practically the largest in the United States?—A. I think so.

     *          *          *          *          *          *          *

Q. (By General Appraiser McCLELLAND.) Have you anything in your trade that is known distinctly as chair cane or reed?—A. You made two questions.

Q. Have you anything distinctly known as chair reeds?—A. No, sir.

     *          *          *          *          *          *          *

Q. Now, taking the chair on one side all by itself; on the other side would be the baby carriages, whips, shoe manufactures, saddlery, and other furniture than chairs, on the other side?—A. You ought not to distinguish those.

Q. But I do.—A. You mean chairs and rattan furniture?

Q. I am simply taking chairs alone?—A. When you speak of rattan chairs, my thought is of our whole line, the whole line of rattan furniture.

Q. I am asking you to disassociate that from your mind and think of chairs?—A. You upset my calculations.

Q. Got another answer, perhaps?—A. I still think that the largest portion of the reeds that are imported and made are used in chairs.

Q. I am speaking now, of course, of the round reeds?—A. Yes.

Q. You think there would be more round reeds used in chairs than for all the other articles, including baby carriages and whips and everything else?—A. I think so.

It is not intended here to decide that only such reeds as are chiefly used in the manufacture of chairs may be classified as "chair reeds." For whatever may be decided upon that issue it is clear upon the foregoing evidence that the reeds here in question were chiefly so used, and therefore in any event would bear that classification.

In respect to the slab rattan and the broom or split rattan, the following decision of Wheeler, District Judge, in the case of Brauss & Co. *v.* United States (120 Fed., 1017), is in point:

These are bundles of split bamboo, about 12 inches long, intended for use in making brooms, and have been assessed for duty as "manufactures of wood" under paragraph 208 of the act of July 24, 1897 (c. 11, 30 Stats., 168; U. S. Comp. St., 1901, p. 1647), as against bamboo, in the phrase "bamboo, rattan, reeds unmanufactured," in paragraph 700 (30 Stat. 202; U. S. Comp. St., 1901, p. 1689), as part of the free list. If "unmanufactured" does not reach back and include bamboo, these bundles are clearly in the free list, for they contain nothing but bamboo. If it does, it still is on the free list, unless they are bundles of manufactured bamboo. Splitting the bamboo and cutting it into lengths do not make it into anything. United States *v.* Dudley (174 U. S., 670; 19 Sup. Ct., 801; 43 L. Ed., 1129). And putting it up in bundles does not change its character. Frazee *v.* Moffitt (C. C., 20 Blatch., 267; 18 Fed., 584).

It seems clear from the present record that the slab rattan and the broom or split rattan in question are used only in the manufacture of brooms, and never in the manufacture of chairs. They can not therefore be classified as chair cane or chair reeds under paragraph 212, *supra,* and are entitled to free entry as rattan unmanufactured. See also United States *v.* Winter & Smillie, *supra.*

It may be argued that the unmanufactured rattans or reeds, which are given free entry by paragraph 713, *supra,* are limited by the last clause of that paragraph to such as are suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes. This construction, however, seems to be untenable, for that clause is plainly one of extension and not one of limitation.

The decision of the board respecting both classes of merchandise is therefore *affirmed.*