PEABODY & CO. ET AL. *v.* UNITED STATES (No. 1804).[1]

1. CONSTRUCTION, PARAGRAPHS 173 AND 648, TARIFF ACT OF 1913—RELATIVE SPECIFICITY—"CHAIR REEDS"—"REEDS UNMANUFACTURED."

The provision in the tariff act of 1913 for "chair reeds" (par. 173) is more specific than that for "reeds unmanufactured" (par. 648).—Rattan & Cane Co. *v.* United States (6 Ct. Cust. Appls., 1; T. D. 35247). Hence, selected and extra selected reeds, although within the latter provision, are classifiable under the former if in fact they are such.

2. EVIDENCE—PRESUMPTION IN FAVOR OF COLLECTOR.

Appellants, protesting against the classification of reeds under paragraph 173, tariff act of 1913, and claiming free entry under paragraph 648, must show that they are without paragraph 173 and within paragraph 648. Showing that a portion of them is without the one paragraph and within the other, without showing what portion, is of no avail. The decision of the Board of General Appraisers, sustaining the collector's classification of Chinese reeds as "chair reeds," under paragraph 173, is affirmed.

United States Court of Customs Appeals. November 20, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40404.

[Affirmed.]

*B. A. Levett* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

-----

[1] T. D. 37436 (33 Treas. Dec., 428).

[Oral argument Oct. 11, 1917, by Mr. Levett and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves a large number of protests made by different importers. Before the board the cases were consolidated and decided as one, and are here.

The merchandise consists of so-called round rattan core or reeds imported from China, measuring less than 7 millimeters in diameter. It was assessed for duty at the rate of 10 per cent ad valorem under paragraph 173 of the act of 1913, in accordance with instructions from the Treasury Department found in T. D. 35573.

It is claimed by the appellants, the importers, to be entitled to free entry under paragraph 648 of the same act. We insert here the relevant portions of each paragraph:

173. Chair cane or reeds wrought or manufactured from rattans or reeds. * * *
648. * * * rattan, reeds unmanufactured, * * * in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas. * * *

The Board of General Appraisers overruled the protests.

The appellants claim that the merchandise is of the same character as that passed upon by this court in United States *v.* Winter & Smillie (4 Ct. Cust. Appls., 522; T. D. 33939), and in Graser-Rothe *v.* United States (7 Ct. Cust. Appls., 142; T. D. 36459).

The Board of General Appraisers in its opinion states that the issue here is the same as that passed upon by it in the Graser-Rothe case, supra. In that case the board overruled the protests, which action was affirmed here.

The records in both the above-cited cases were by order of the Board of General Appraisers upon the request of both parties, moved into the record here for the purpose, it is said, of presenting more completely the question of the proper classification of china reeds.

The Government contends that the merchandise here is not in all respects identical with that involved in the Winter & Smillie case, claiming that there the issue related solely to common china reeds or pith; that in the cases now before us the merchandise is divided into three classes, generally called (1) common core or reeds, (2) the selected, and (3) the extra selected article; and in addition that at least the selected and the extra selected reeds are adapted to chair-making purposes, and to a greater or less but to a substantial extent so used.

In the Winter & Smillie case the record shows that both counsel and witnesses understood that the merchandise there involved was generally known as common rattan core, or pith, or reed. When the importers' testimony was offered, it appeared that some of the importations were of selected and extra selected reeds. As to such reeds no claim was made or issue there litigated. The Government

offered no testimony, and some given in importers' behalf and uncontradicted was to the effect that the reeds under consideration were so inferior that they could not be used in the manufacture of chairs or furniture and were sold only to manufacturers of brooms.

In that case the board stated that a protest, which from the record we conclude related to selected and extra selected reeds, was abandoned by the importers, and in its opinion said:

> Protestants' claims are limited to the merchandise invoiced as "common rattan" or as "common china reeds," and on the record * * * we hold such merchandise to be entitled to free entry, * * *.

This court in the Winter & Smillie case made no reference whatever to selected or extra selected reeds, referred to the merchandise as the crudest form of reed imported less than 7 millimeters* in diameter, and as not suitable for sticks for umbrellas, parasols, or sunshades, and affirmed the decision of the board.

In passing it may be well to note that this decision was based upon provisions of the tariff act of 1909, identical, however, for the purposes of this case, with those of 1913, above quoted.

In their testimony given before the board in the cases at bar, importers' witnesses, mainly the same called in the Winter & Smillie and Graser-Rothe cases, testified that the merchandise was similar to, the same as, or identical with that involved in both the beforementioned cases, and in explanation of that view testified that the reeds, whether common, selected, or extra selected, were the products of the same operations which first produced the reed from the rattan and that the selected and extra selected were simply the results of grading or separating such first product into three classes—the lowest the common, the next higher the selected, and the highest the extra selected.

Upon the strength of this evidence importers contend that the selected and extra selected are reeds unmanufactured and in the rough, etc., and that, therefore, in effect, they are the same passed upon in the two earlier cases. The fact, already stated, however, must not be lost sight of, so far as the Winter & Smillie case is concerned, that the reeds, the classification of which was determined in that case, were not the selected or the extra selected and were only those invoiced, as before stated, as "common rattan" or "common china reeds," so that it is incorrect to say that this court in the Winter & Smillie case passed upon the selected or extra-selected reeds.

So far as the Graser-Rothe case is concerned (see Abstract 39169; 30 Treas. Dec., 135), it appears from the board's decision that the merchandise was manufactured from rattan reeds which the Board found were used without further treatment than being cut into lengths in the making of baby carriages and other articles of furni-

ture, that the processes of manufacture were not shown, and that it did not appear to be the crudest form in which reeds were imported.

In this court that decision of the board was affirmed because upon the record we felt that we were not justified in finding that they were unmanufactured or not further advanced than cut into lengths; neither were we able to say, as importers there claimed, that they were identical with the reeds involved in the Winter & Smillie case. In other words, the judgment was affirmed because the importers had failed to show that the merchandise was within the provision of the free-entry paragraph which they relied upon.

Now in the case at bar, the importers, upon one aspect of the case ask us to reverse the necessarily implied finding of the board that the merchandise is not within paragraph 648, and to sustain their assertion that the evidence shows they are not such, rely, in part, at least, as already stated, upon the proposition that they are of the same character as those passed upon in the Winter & Smillie case. In this connection they further urge that the only evidence that they are chair reeds is that which shows in substance that since the beginning of the European war and because of the difficulty in obtaining a better quality of reed known as the German reed, these Chinese reeds have come into use in the manufacture of chairs. Upon this point they argue that their evidence tends to show that such use is not really commercially practicable; that the reeds are too brittle and in some other respects are deficient in the qualities requisite to enable them to be successfully used in the making of chairs, and urge that the classification of an article for tariff purposes relates to its status at the time the act in question was passed and can not be predicated upon conditions intervening subsequently thereto.

On the other hand, the Government contends that there is evidence tending to show that the two higher grades of these reeds had been used in substantial quantities in the manufacture of chairs for a considerable period prior to the act of 1913, and that with this evidence before the board we are not justified in reversing the finding of fact.

In this connection we note that the board annexes to its decision here a list of the protests involved, after about half of which the invoice description is inserted, and that referring thereto the board says:

* * * It will be noted that on only one of the invoices are the reeds described as being "common," and as to those covered by this particular invoice there is no testimony that they are not equal to those invoiced as "extra select," "selected," or "rattan core," or that they were not sold to furniture manufacturers to be made into chairs.

These particular invoices, the list of which contains a description of the merchandise, are part of the files before us, but the others have not been furnished, and as no question is made as to the correctness

of the board's quoted statement in this regard, we accept it as correct so that we have but one invoice which describes the merchandise as "common" which, as already appears, was the description of that involved in the Winter & Smillie case.

It would be a thankless task to enter into an extended review of the testimony embodied in the voluminous record before us. The Board of General Appraisers had opportunity of hearing the witnesses and of reviewing the evidence and without arraying here that which makes for or against their conclusion that the merchandise is dutiable as assessed—and there is considerable testimony in support of either view—we feel constrained to say that upon this record we do not feel justified in reversing their judgment. Especially is this true as to the selected and extra-selected reeds.

In the case of the Rattan & Cane Co. v. United States (6 Ct. Cust. Appls., 1; T. D. 35247), it was held that the provision for "chair reeds" was more specific than the one for "reeds unmanufactured," and hence selected and extra-selected reeds, although within the latter provision, are classifiable under the former if, in fact, they are such

We are satisfied, however, that a substantial portion of the merchandise is in fact the common reed, very like or identical in quality with that passed upon in the Winter & Smillie case and not properly classifiable as a chair cane or reed, but on the record and exhibits we are unable to determine what importations, or what part of any thereof is such.

The result is that upon the record here the judgment of the Board of General Appraisers ought to be and it is *affirmed*.