PEABODY & CO. ET AL. *v.* UNITED STATES (No. 1989).[1]

1. CONSTRUCTION, PARAGRAPH 648, TARIFF ACT OF 1913—"CUT INTO LENGTHS."
    The provision of paragraph 648, tariff act of 1913, for "Reeds unmanufactured, * * * or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes" *extends*, not *restricts*, reeds to such as are cut into such suitable lengths; so that the paragraph includes such reeds whether or not they are suitable for the uses named.—Winter & Smillie *v.* United States (4 Ct. Cust. Appls., 522; T. D. 33939) and Rattan & Cane Co. *v.* United States (6 Ct. Cust. Appls., 1; T. D. 35247).

2. CONSTRUCTION, PARAGRAPHS 173 AND 648, TARIFF ACT OF 1913—RELATIVE SPECIFICITY—CHAIR REEDS—ROUGH REEDS.

Round reeds in the rough, chiefly used for the making of chairs, are more specifically provided for as chair reeds in paragraph 173, tariff act of 1913, than as reeds in the rough, in paragraph 648.—Rattan & Cane Co. *v.* United States (6 Ct. Cust. Appls., 1; T. D. 35247) and United States *v.* Gerdau (6 Ct. Cust. Appls., 7; T. D. 35248). Reeds which are produced by subjecting the rattans to no manufacturing processes other than removing their bark or enamel and cutting them into lengths are classifiable under paragraph 648, except that such of them as are chiefly used for the manufacture of chairs are classifiable under paragraph 173.

3. EVIDENCE—PRESUMPTION FAVORS COLLECTOR.

A protestant against the classification of reeds as chair reeds, claiming that they are reeds in the rough, must show that they are in the rough and that they are not chiefly used in the manufacture of chairs.

4. CHINESE REEDS.

Chinese reeds in the rough, graded as common, selected, and extra selected, were classified by the collector as chair reeds under paragraph 173, tariff act of 1913, and the importers' protests claiming them to be classifiable as rough reeds under paragraph 648 were overruled by the Board of United States General Appraisers. The evidence establishing that the common are not chiefly used for making chairs but failing to establish that the other two grades are not so used, the decision of the board is reversed as to the common and affirmed as to the selected and extra selected.

## United States Court of Customs Appeals, December 3, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8252 (T. D. 37988).

[Modified.]

*B. A. Levett* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Oct. 27, 1920, by Mr. Levett and Mr. Lawrence.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the dutiable status of Chinese reeds, which were classified by the collector of customs at the port of New York as chair canes and assessed for duty at 10 per cent ad valorem under that part of paragraph 173 of the tariff act of 1913, which reads as follows:

173. Chair cane or reeds wrought or manufactured from rattans or reeds, 10 per centum ad valorem * * *

The importers protested that the goods were reeds unmanufactured, and that they were therefore free of duty under the provisions of the free list, which, in so far as pertinent, reads as follows:

FREE LIST.

* * * The articles mentioned in the following paragraphs shall, when imported into the United States * * * , be exempt from duty:

648. * * * Reeds unmanufactured, * * * and other woods not specially provided for in this section, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

The board overruled the protest and the importers appealed.

Reeds unmanufactured were first free-listed by section 3 of the act of 1832, but the courts were not called upon to determine just what were "unmanufactured reeds" until the passage of the tariff act of 1883, which admitted free rattans and reeds unmanufactured and imposed a duty of 10 per cent ad valorem on manufactured rattans and reeds manufactured not made up into completed articles. "Round," "square," "oval," and "flat" reeds imported in 1887 and 1888 were assessed by the collector of customs under the act of 1883 at 10 per cent ad valorem as "reeds manufactured, but not made up into completed articles." The importer protested that the reeds were not manufactured and were therefore not dutiable as found by the collector. On the trial of that issue it was proved that raw rattan was submitted to a mechanical process which removed the outer enamel or bark from the inner core. It appeared from the testimony that the bark or enamel cut into strips was known to the trade as "chair cane," and that the inner core, or pith left in its cylindrical form, was the crudest form of reed, and was known to the trade as "round reed." It was also shown that there was a "square reed," an "oval reed," and a "flat reed." The "square reed" was made in two ways, either by so cutting the rattan from the core as to square the cylindrical core or by squaring the cylindrical core after the outer bark had been removed. The "flat reeds" and the "oval reeds" were produced invariably by cutting either the "round reed" or the "square reed" to the form and size required.

. On this state of the case Lacombe, Judge, held that inasmuch as the cylindrical core which was left after stripping off the enamel and bark of the rattan was a reed in its condition as first produced, it was a reed unmanufactured, and that as "oval" and "flat" reeds were made from the cylindrical core by a second process of cutting, they were reeds manufactured. Judge Lacombe ruled that "square reeds" manufactured by cutting them out of the original rattan were unmanufactured reeds, but that if they were produced by cutting the core they were reeds manufactured. In view of the fact that it was not shown in what way the reeds were produced, the jury was directed to find a verdict in favor of the plaintiffs for the "round reeds" only. Foppes et al. v. Magone (40 Fed., 570).

Paragraph 229 of the tariff act of 1890 omitted the provision for rattans and reeds manufactured, but not made into completed articles, and levied a duty of 10 per cent ad valorem on "chair cane, or reeds, wrought or manufactured from rattans or reeds, and whether round, square, or in any other shape." Standing by itself that provision might well have been regarded as intended to meet the decision in the Foppes case and to subject all reeds to duty. No such legislative intent could very well be implied, however, inasmuch as paragraph 756 of the very same act expressly exempted from

duty "reeds * * * in the rough, or not further manufactured than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, or walking-canes." Notwithstanding the terms of paragraph 756 the collector of customs at the port of New York evidently considered the duty paragraph as controlling and accordingly assessed a duty of 10 per cent ad valorem on reeds in the rough cut into lengths suitable for sticks for whips and imported soon after the passage of the act of 1890. The Board of General Appraisers disagreed with the collector and construing paragraph 229 as if it read "chair canes, or *chair* reeds, wrought or manufactured, from rattans or reeds," sustained the importers' protest that the importation was free of duty. (T. D. 11586; G. A. 761.)

A little over a year after that decision the Board of General Appraisers was again called upon to classify first, reeds not further manufactured than cut into lengths for whips; second, thin flat reeds wrought from reeds manufactured from rattans, and third, Chinese reeds about one-eighth of an inch in diameter and suitable for the manufacture of brooms. The board rejected the construction of paragraph 229 announced in T. D. 11586 and held that reeds not further manufactured than cut into lengths for whips were free of duty, and that flat reeds wrought from reeds and Chinese reeds used in the manufacture of brooms, were dutiable under paragraph 229. (T. D. 13244; G. A. 1665.)

In August, 1892, the board again ruled on the classification of reeds and held that reeds made from rattans or reeds .were not free of duty. That decision was affirmed by the Circuit Court which held that the reeds in issue were "not exactly in the rough" and in effect that paragraph 229 was not confined to chair canes and chair reeds. (T. D. 28144.) Although neither the decision of the board nor that of the Circuit Court contains any definite description of the merchandise, it is apparent from what the board said in a subsequent decision (T. D. 22533; G. A. 4780) that the reeds were soft reeds and not suitable for the uses specified in paragraph 756. Accepting that as the description of the merchandise it is clear that the board at least so construed the free list provision as to exclude from it all reeds in the rough not suitable for the making of sticks for umbrellas, parasols, sunshades, whips, or walking-canes. The Circuit Court without opinion in Gerdau *v.* United States, (suit No. 2736) held that soft reeds were suitable for the purposes specified and that decision was accepted as final by the Government. (T. D. 22371.)

Paragraph 206 of the tariff act of 1897 struck out of paragraph 229 of the tariff act of 1890 the words "and whether round, square, or in any other shape," and read "chair cane or reeds, wrought or manufactured from rattans or reeds," which phraseology was repeated in paragraph 212 of the act of 1909 and in paragraph 173 of the tariff act of 1913.

Paragraph 756 of the act of 1890, exempting from duty reeds in the rough or not further manufactured than cut into lengths suitable for sticks for umbrellas, was reenacted in paragraph 700 of the act of 1897, in paragraph 713 of the act of 1909, and also in paragraph 648 of the act of 1913, with the exception that fishing rods were added to the list of sticks for which reeds might be cut into lengths.

The Board of General Appraisers, however, continued to hold that all reeds in the rough not suitable for the sticks enumerated in the free list were dutiable, and accordingly decided in T. D. 22533 (G. A. 4780) that reeds of a diameter less than 7 millimeters were not entitled to free entry because they were unsuitable for such sticks.

The question as to whether the free list exempted from duty reeds in the rough not suitable for the sticks enumerated was squarely raised in the case of the United States v. Winter & Smillie (4 Ct. Cust. Appls., 522; T. D. 33939), and this court definitely held that the words "or not further manufactured than cut into sticks, etc.," were words of extension, not restriction, and that free entry was accorded to reeds in the rough not specially provided for, and also to reeds not specially provided for which after their production were subjected to no additional process other than that of cutting them into lengths suitable for the sticks specified. That interpretation was reaffirmed in Rattan & Cane Co. v. United States (6 Ct. Cust. Appls., 1–5; T. D. 35247), in which case it was also decided that round reeds in the rough and *chiefly* used for the making of chairs were more specifically provided for by the dutiable provision for chair reeds than in the free list paragraph for reeds not specially provided for and therein enumerated. The ruling that round reeds chiefly used for making chairs were not entitled to free entry was confirmed in United States v. Gerdau (6 Ct. Cust. Appls., 7; T. D. 35248).

A consideration of the cases above cited leads us to the conclusion, first, that all reeds not specially provided for which are subjected to no process after they are produced by removing the bark and enamel from the rattan, or, which after being so produced are subjected to no additional process other than that of cutting them into lengths suitable for the sticks enumerated, are entitled to free entry; second, that reeds so produced or not further advanced than cut into lengths for such sticks, if chiefly used for the manufacture of chairs, are more specifically provided for as "chair reeds" and therefore dutiable.

With that as the settled law it is apparent that if reeds are assessed as "chair reeds" the burden is imposed on the importer of showing not only that they are reeds which are either in the rough or not further manufactured than cut into lengths suitable for sticks, but also that they are not chiefly used for making chairs. Graser-Rothe v. United States (7 Ct. Cust. Appls., 142; T. D. 36459). That

showing the importers endeavored to make on the first hearing before the board of the present case and they succeeded in establishing that the reeds in issue were of three grades—common, selected, and extra selected—all of which, however, were produced by stripping from rattans the bark or enamel.

The evidence was to the effect that the reeds covered by protests 788710, 793710, and 802930 were selected; that those included in protests 791352, 793793, 797228, and 802378 were selected and extra selected; that the reeds mentioned in protests 799497, 799535, and 802246 were specially selected; and those covered by protests 798460, 798461, and 801675 were invoiced as specially selected; that one-third of the reeds of protest 796490 were extra selected and two-thirds common, and that the reeds put in issue by protest 791379 were a little better than common, but were sold as specially selected.

It further appeared definitely from the evidence in the case that all the reeds whether common, selected, or extra selected were reeds in their first condition and that they were subjected to no further process after they had been produced by hand stripping the bark or enamel from the rattan. The three grades of reeds are not produced by manufacturing, but by sorting the reeds so produced, the selected reeds being sorted from the common reeds and the extra selected from the selected. The extra selected reed is smooth and white and is larger, of more uniform size, of better quality, and less brittle than the other two grades. The sorting of reeds began in 1910 and was brought about by the expectation that grading the reeds would secure a better class of reed, which could compete successfully with German machine-cut reeds. From the beginning the selected reeds failed to meet expectations, and having been rejected in large quantities by manufacturers of chairs and baby carriages were sold at a loss to makers of brooms and brushes. For about two years the extra selected reeds did compete with the German reed, but after that they came into disfavor and were practically driven from the market except as material for the manufacture of brooms, brushes, and probably baskets and baby carriages. The German reeds in their turn were excluded from the market by the World War, and because of their exclusion the extra selected reeds were again imported for the making of chairs and other articles in the manufacture of which German reeds had theretofore been preferred. The extra selected did not prove satisfactory and early in the year 1916 their use for chair making had almost ceased, not because such reeds of themselves were of poor quality, but because they were packed in the bale with large percentages of inferior reeds and a purchaser of extra selected or even selected reeds was wholly without assurance that his order would be filled by a good delivery. Indeed, so much out of favor were extra selected reeds with the chair-making concerns that

some of them began to manufacture from imported rattan reeds better suited to their purposes. Others substituted artificial reeds made of paper stock and many of the manufacturers of baby carriages were driven to use wooden bodies instead of bodies made of reeds.

There was also testimony on behalf of tne importers that the reeds whether common, selected, or extra selected were similar to or identical with those involved in the Winter & Smillie case. As there was evidence on the part of the Government that the two higher grades of reeds had been used in substantial quantities in the manufacture of chairs prior to the tariff act of 1913, this court did not feel justified in reversing the board's finding as to such reeds, and as there was no way of determining how much of the importation was common reeds, this court was compelled to affirm the decision of the board overruling the importers' protest as to all of the merchandise.

The importers filed a petition for a rehearing, whereupon, the Government consenting, the decision of affirmance was vacated and the case remanded with direction that both parties be permitted to introduce further evidence and that upon such evidence the board determine the proper classification of the merchandise.

Conforming to the order to remand the case it was retried before the board. The board having again overruled the protests the importers by appeal now ask this court to reverse that decision.

On the rehearing before the board protests 788610, 791352, 791379, 793793, 797228, and 802378 involved in suit 1804 were dropped from the calendar, and some 46 additional protests were brought into the case.

Charles H. Demarest testified on behalf of the importers that the invoice description of reeds could not be relied upon and that reeds invoiced as selected or extra selected might be found upon examination to be nothing better than common. He further said that although the reeds covered by protests 798460, 798461, and 801675 were invoiced as specially selected, they were in fact common reeds and sold to manufacturers of brooms and brushes. The testimony was uncontradicted that the reeds referred to in protests 806295, 807468, 810630, 810631, 814802, 815629, 851788, 848099, 847986, 815671, 815672, 816921, and 816922, entry No. 123238, and 816921 and 816922, entry No. 122112 were common reeds and were sold to broom and brush manufacturers.

George H. Maus testified that the reeds referred to in protests 811209, 811501, and 848793 were imported for him by Henry W. Peabody & Co. and O. G. Hempstead & Son; that the reeds so imported were of common rattan core and that save one transaction that was the only class of reeds in which he ever dealt. He further testified that the reeds so imported for him were all sold directly to manufacturers of brooms and brushes, with the exception of 75

bales sold to Jacobson & Co., jobbers who traded exclusively as he understood it with broom and brush manufacturers.

E. J. Wentz testified that he was secretary of the Far East Importing Co. and that the reeds involved in protest 848733 were common reeds; that the 210 bales of reeds referred to in protest 799497 were invoiced as selected unmanufactured rattan core and were sold as such to chair manufacturers, but that those reeds were in fact common reeds and were rejected by the chair manufacturers because of their bad quality. By reason of their failure to come up to contract specifications, the Far East Importing Co. secured an allowance of 12 cents a hundred on the reeds and they were subsequently sold to a manufacturer of baskets.

The testimony on the part of the Government was to the effect that any reed whether common or not might be used in the making of chairs. It further appeared from the testimony adduced on the part of the Government and especially from the testimony of the witness, Cleveland, that the sorting of the reeds into grades was so inefficiently done that from a practical standpoint there was no difference between them save as to price. Cleveland's experience with Chinese reeds was such that he had been unable to see that selected and extra-selected reeds worked out any better than common Chinese reeds, and therefore his firm went into the business of manufacturing reeds from rattan and bought Chinese reeds only when a sufficient supply of rattan could not be obtained. Chapman, a manufacturer of chairs, and another witness for the Government stated, that he had found it not in accord with his business to use common reeds after 1915 and within the period when German reeds were not available.

The fact that both common reeds and selected reeds failed to compete with the German reed soon after the practice of sorting Chinese reeds was established and that even the extra selected went out of favor with the chair makers after two years of competition, justifies the conclusion that all Chinese reeds were not suitable for the making of chairs. As reeds in the rough were sorted for the express purpose of securing a grade of reeds suitable for chair making and for purposes other than the manufacture of brooms and brushes, it is evident that the common reed at least was unacceptable to chair makers and that at best only the properly selected and the extra-selected reeds were suitable for the manufacture of chairs.

We must hold therefore that the common reeds do not come within the designation of "chair reeds" and that it was not the legislative intent that they should be so classified, inasmuch as that classification would result in the elimination of the free-list provision for reeds in the rough.

It is probably true that in the past selected and extra-selected reeds, *due to bad sorting*, have been used by manufacturers of chairs for experimental purposes only or when reeds were not available, but from that it can not be deduced that these grades properly sorted are not suitable for making chairs and much less that they are not chiefly used for that purpose when sorted according to the specifications of their grade. As it was not established by satisfactory evidence that the reeds *invoiced as selected or extra selected* were not of those grades and as there was no evidence that properly graded selected and extra selected reeds are not chiefly used for the manufacture of chairs, we think the decision of the board overruling the protests covering reeds invoiced as selected and extra selected, and not shown to be common, must be sustained.

The decision of the board is reversed as to protests 798460, 798461, 801675, 806295, 807468, 810630, 810631, 814802, 815629 851788, 848099, 847986, 815671, 815672, 816921, and 816922; entry Nos. 122112, 816921, and 816922; entry Nos. 123238, 811209, 811501, 848793, 848733, and 799497, and as to all other protests said decision is affirmed.

*Modified.*