(C.D. 2286)

ATKINS, KROLL & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 25, 1961)

*Lawrence & Tuttle* (*Frank L. Lawrence, Edward N. Glad,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Mollie Strum, Alfred A. Taylor, Jr.*, and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; JOHNSON, J., concurring

DONLON, Judge: Three protests have been consolidated for trial.

The merchandise in issue is described as palmyra stalks, product of India. The classification of palmyra stalks (and of palmyra fiber) has been a much litigated issue over many years. The most recent decision is *Chas. H. Demarest, Inc.* v. *United States*, 44 C.C.P.A. (Customs) 133, C.A.D. 650, affirming *id.* v. *id.*, 36 Cust Ct. 301, C.D. 1790.

In the *Demarest* case, the collector had classified the merchandise (both stalks and fiber) as fibrous vegetable sustances, manufactured, in whole or in part, not specially provided for, and dutiable as such under the nonenumerated provision of paragraph 1558, Tariff Act of 1930, as modified. Although plaintiff's protest in the *Demarest* case recited several alternative claims, all save two of the claims were abandoned. Judgment supported the collector's classification.

Here, the collector also liquidated palmyra stalks in the classification of a nonenumerated manufactured article under paragraph 1558, as modified.

Plaintiff's consolidated protests recite a number of alternative claims, but only one of these claims was argued. The other protest claims are deemed abandoned, and they will be dismissed. The claim here litigated was not presented to the court in the *Demarest* case. Indeed, it seems not to have been presented to the court in any of the prior cases involving classification of palmyra stalks. Such cases are, therefore, not *stare decisis* of the issue now before us.

Plaintiff's claim is that these palmyra stalks are duty free under paragraph 1806 as sticks of wood, rough, or not further advanced than cut into lengths.

The expert testimony adduced in plaintiff's behalf is that, scientifically speaking, these palmyra stalks are wood. Defendant introduced no rebuttal evidence. While the scientific meaning is not always the common meaning of a term, the lexicographic and other definitions support a finding that palmyra stalks are wood. For example, the article on "Wood" in the Encyclopaedia Britannica, 1947 edition, contains the following relative to wood, including the wood of palms:

WOOD. In all classes of plants, including for instance ferns, more highly organized than mosses, wood occurs in all members of the plant and is continuous from the finest rootlets up the root and stem, into the leaves and flowers or the equivalents of these. Wood performs two functions in the plant's life: first, it serves for the transport of water and contained salts, absorbed by the roots, to parts where this "raw sap" is needed and especially to the leaves; secondly it gives mechanical strength to the plant.

In palms and bamboos the wood of the leaves is string-like in form and is confined to the nerves or veins; from these the strings extend into the trunk or stem, where they descend but join one another at intervals thus producing a more or less basket-like or loose loofah-like complex, which is embedded in the general mass of tissue composing the rest of the trunk. Thus it is this linked net-like complex of woody strings that corresponds to the solid mass of wood of a pine or oak.

Wood that has attained only slight thickness and accordingly cannot be termed timber, is nevertheless utilized, for instance in the form of thin branches and twigs to make besoms and baskets. [P. 714.]

The palmyra is a palm. See Webster's New International Dictionary, second edition (1956); also, deposition of Henry Churchill, of evidence in this case. (Exhibits 5 and 5–A.)

The remaining question then is, are these pieces of wood, in condition as imported, sticks, "in the rough," within the intention of Congress as it is expressed in paragraph 1806, or not further advanced than cut into lengths suitable for some use that is enumerated in that paragraph.

Mr. Churchill made his deposition at Madras. He is a director of Ripley & Co., Ltd., of Kakinada, India, who sold the palmyra stalks to plaintiff. The processing of the palmyra wood prior to importation was described in Mr. Churchill's deposition as follows:

2) If you are familiar with palmyra stalks in regards above-mentioned, will you state how that knowledge was gained and set forth in detail (a) the size and structure of the palmyra leaves, (b) the source of the stalks, (c) the means and method of separating them from the parent tissue, (d) practical reasons for this treatment, (e) drying and other processing prior to packing ready for shipment, (f) manner of packing and size of packages, and (g) the kind of packing material used.—A. I have gained my knowledge of palmyra stalks by buying and selling these stalks and constant supervision of their qualities over a period of eight years: (a) The palmyra leaf is a long narrow leaf coming from the palmyra palm and at maturity reaches up to fifty inches or so in length the width being three inches on each side of the center grip at the base narrowing to a point at the top, (b) The stalk is extracted from the center of the leaf. It is a rib or vein running the lengths of the stalk and is about a quarter of an inch thick at the base tapering to nothing at the top, (c) the leaves are cut from the tree left to dry out for two or three days and are then pulled away from the stalks by hand. Some adherent leaf matter still attaching to the stalk is then cut from the stalk by drawing the stalk along a knife. The stalks are then tied into bundles and again cut to the requisite lengths, (d) The stalks are used mainly in brush making and the texture of the stalk is very much stronger than that of the leaf. The adherent leaf is, therefore, objectionable, (e) No treatment other than that described in item (c) is given to the stalks prior to packing, (f) The bundled stalks are sewn into gunny bales weighing 112 lbs. net. These bales are shipped on a weight basis and actual size of the bales is determined by the length of the stalk which is packed and actual measurement of these bales are not taken, (g) Gunny cloth and jute twine.

In response to cross-interrogatory 2, "Are the palmyra stalks referred to in direct interrogatories 1 and 2 always cut to lengths of

18 inches prior to shipping or are they also cut into other lengths?", Mr. Churchill replied: "They are also cut to other lengths."

Mr. Churchill also stated that the commercial importance of the processing he described is in the saving effected in weight and freight, thus enabling the stalks to be sold at a lower cost, and that it also effects a saving in the cost of the packaging material.

There are several exhibits, illustrative of the merchandise as imported (exhibit 1) and of the palmyra leaves from which the stalks are derived. There were two witnesses for plaintiff, besides Dr. Cockrell.

Mr. Gustav A. Gumbrecht testified that he is president of Henry W. Peabody & Co., a firm that imports palmyra stalks and has been doing so for 25 years; that stalks, such as plaintiff's exhibit 1, are sold chiefly for use in rotary brooms and push brooms; that they are imported in lengths of 16, 18, 22, 26, and 29 inches; that they are never imported with the butt or tip ends uncut, because the stalks are required to be cut to specific length. (R. 32.)

Mr. Stephen T. Barber testified that he has been with plaintiff for 9½ years and has bought palmyra stalks and sold them to wholesale distributors in the United States for approximately 6 years; that the stalks are imported in burlap bales, each of which contains bundles; that stalks of a particular length are in a bundle, separate from stalks of other lengths; that stalks are ordered cut at both ends and to various uniform lengths, in order to meet the lengths specified by the domestic customers. (R. 12, 15, 18.)

There was comment that the assembling of stalks into bundles of uniform length resulted in reduced freight costs, but there was testimony also that freight was based on weight of the bales, regardless of length.

In the *Demarest* case, *supra*, we held (and our appeals court affirmed) that both the fiber and the stalks had been manufactured, within the intention of Congress as expressed in paragraph 1558. It was there held, also, that although both the fiber and stalks are fibrous vegetable substance, they are "dressed or manufactured" so as to take them out of the free list provided in paragraph 1684. The method of processing palmyra stalks is more extensively described in the *Demarest* case, but, as to cutting into lengths, the process there considered is essentially the same as the cutting here described. The competing tariff provisions urged are, however, different in the two cases.

The provisions in competition in the *Demarest* case were as follows: Paragraph 1558, as modified:

Articles manufactured, in whole or in part, not specially provided for: * * * and textile grasses or fibrous vegetable substances (except istle or Tampico fiber) * * *.

Paragraph 1684 of the free list:

Grasses and fibers: * * * and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

Paragraph 1806 of the free list, under which plaintiff here claims, is as follows:

Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

These are sticks of wood. Before deciding whether they are "in the rough," we first consider the evidence as to the cutting of the sticks into lengths.

These sticks were cut into lengths specified by manufacturers of rotary brooms and push brooms. From that, it is fair to infer that these were the lengths suitable for the uses broom manufacturers would make of the palmyra stalks. Whether or not such lengths also were of value in facilitating shipment or economizing on freight (and evidence as to this is not persuasive), it is clear that these palmyra stalks were cut into lengths specified by the purchasers, who were broom manufacturers.

Brooms are not included among the "umbrellas, parasols, sunshades, whips, fishing rods, or walking canes," enumerated by Congress in paragraph 1806 as suitable uses for which cutting into lengths would not result in taking sticks of wood off the free list.

We frequently have occasion to remind litigants that we do not make the tariff law. Congress makes the law. If Congress had wished to include in the free list sticks of wood, not further advanced than cut into lengths suitable for rotary brooms and push brooms, it presumably would have done so. It did not, and we may not substitute our will for that of Congress by adding to the statutory enumerations some further item. *Expressio unius est exclusio alterius* is a legal maxim too well established to require the citation of authorities.

Having held, as we do, that these sticks of wood have been cut into lengths for a particular use, and that this use is not one enumerated in paragraph 1806, the question remains for decision as to whether they are, nonetheless, sticks of wood in the rough. What did Congress intend? We have found that they are not "in the rough," because they have been advanced by cutting into lengths. If sticks of wood, cut for any use, are sticks of wood "in the rough," then Congress was clearly redundant and added nothing by the cutting-into-lengths provision, which is an alternative to the "in the rough" provision.

We are to construe all of the legislative language in arriving at congressional meaning. Congress intended that sticks of wood, cut

into lengths, were not "in the rough." Congress proceeded, however, to keep on the free list, by express enumeration, sticks of wood which have been cut into lengths, when those are shown to be lengths suitable for the uses Congress stated.

The protest is overruled. Judgment will be entered accordingly.

### CONCURRING OPINION

JOHNSON, Judge: The issue presented in this case is the same as that before the court in *Great Pacific Co., Inc.* v. *United States*, 64 Treas. Dec. 590, T.D. 46757. The merchandise there consisted of ribs of palm leaves, sorted, and cut into exact lengths. It was claimed to be free of duty under paragraph 1703 of the Tariff Act of 1922, the predecessor of paragraph 1806 of the present tariff act, as sticks of wood, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, etc. The court held that the evidence tended to prove that the structure of the palm fiber was such that it would be classed as a wood, but overruled the protest, stating (p. 592):

The provision in paragraph 1703 for "other woods not specially provided for" is intended to cover two classes of woods: First, woods in the rough; and second, woods not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, etc. Palm fiber dressed in the same manner as the palm fiber in question herein was held in T.D. 44580 to be advanced in condition, and therefore the palm fiber herein is not in the rough and is not included in the first class provided for. Congress has specifically extended the second class of nonenumerated woods to include such as have been advanced by cutting into lengths so as to be suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes. There is no competent evidence in the record to prove that the palm fiber in question has been cut into lengths suitable for use in making any of the articles named in the second class.

On a petition for a rehearing, which was dismissed as untimely, *Great Pacific Co.* v. *United States*, 65 Treas. Dec. 470, T.D. 46952, appeal dismissed 22 C.C.P.A. (Customs) 336, T.D. 47364, the court discussed the substantive question further and distinguished the cases of *United States* v. *Winter & Smillie*, 4 Ct. Cust. Appls. 522, T.D. 33939; *Rattan & Cane Co.* v. *United States*, 6 Ct. Cust. Appls. 1, T.D. 35247; *United States* v. *Larzelere & Co.*, 6 Ct. Cust. Appls. 273, T.D. 35502; and *Peabody* v. *United States*, 10 Ct. Cust. Appls. 220, T.D. 38562, stating (p. 473):

* * * In holding that the phrase "or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes" were words of extension rather than restriction, our appellate court held that it was an extension to woods *in the rough* so that such classification would include sticks not further advanced than cut into lengths suitable for sticks for umbrellas, etc. But it was not held that it was not necessary for the sticks so advanced to be suitable for the purpose named in the paragraph. In other words, when the sticks were advanced further than in the rough, they must be in lengths suitable for use in making the articles named in the paragraph. * * * [Italics quoted.]

This case (T.D. 46757) was referred to in *American Push Broom & Brush Co.* v. *United States*, 25 C.C.P.A. (Customs) 248, T.D. 49391, wherein the court agreed with the holding of the trial court that paragraph 1703 was inapplicable, stating (p. 253):

\* \* \* We are not convinced by the evidence upon this point that the merchandise is wood of a character contemplated to be covered by paragraph 1806.

See also *Pacific Customs Brokerage Co.* v. *United States*, 5 Cust. Ct. 146, C.D. 387, holding that sticks of birch, cut into random lengths, used for various purposes in the manufacture of furniture, are not classifiable under paragraph 1806, as they are neither in the rough nor suitable for manufacture into the articles named.

In the instant case, the evidence establishes that after the palmyra stalks were separated from the adherent leafy matter, they were cut to the lengths desired by the purchasers for use in the manufacture of brooms and brushes. They have, therefore, been advanced from the crude or primary state along the lines of their ultimate use and are not classifiable under the provision in paragraph 1806 for sticks in the rough. *Chas. H. Demarest, Inc.* v. *United States*, 44 C.C.P.A. (Customs) 133, C.A.D. 650; *Great Pacific Co., Inc.* v. *United States*, *supra*. Since there is no proof that they were cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes, under the authorities cited, they are not classifiable under the provision in paragraph 1806 for sticks cut into such lengths.

For the reasons stated, I am in accord that the claim in the protest herein for classification under paragraph 1806 of the Tariff Act of 1930 should be overruled.