Norman G. Jensen, Inc., plaintiff v. United States, defendant

Court No. 76-4-01016

Before Richardson, *Judge.*

(Dated November 12, 1981)

*George R. Tuttle, A Professional Corporation* (*Stephen S. Spraitzar* at the trail and on the briefs) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Madeline B. Kuflik* at the trial and on the brief) for the defendant.

Richardson, *Judge:* The merchandise in this case, described on invoices as "grain screenings pellets". was exported from Canada between May and September of 1971, and classified in liquidation upon entry at Blaine, Washington under TSUS item 184.75 as modified by T.D. 68-9 as animal feeds, not specially provided for, other, at the duty rate of 8 *per centum ad valorem.* Plaintiff claims that the merchandise should be classified under TSUS item 184.47 as modified by T.D. 68-9 as grain screenings, ground or not ground, other, free of duty.

In the pleadings defendant admits that the imported merchandise consists of grain and seed screenings which undergo a pelleting process [amended complaint, paragraph 9]. And, although initially placed in issue, defendant admitted at the conclusion of the trial that the imported pellets are a form of grain and seed screenings [defendant's brief, page 4, footnote 3]. Additionally, plaintiff has expressly admitted that the imported pellets were chiefly used as food for animals on

or about the dates of importation [exhibit A]. In view of these admissions the issue presented for disposition by the court is whether the merchandise at bar is more specifically provided for in item 184.47 as *claimed* than in item 184.75 as *classified*.

The evidentiary record indicates that the imported merchandise consists of screenings from a grain elevator in British Columbia, Canada. The screenings, composed of wild oats, dust (chaff), small weed seeds, and small broken grains, undergo a grinding process to degerminate the weed seeds. Because the grinding does not degerminate the smaller weed seeds, the screenings are run through a pellet mill which utilizes pressure and heat to degerminate the weed seeds that were not removed in the grinding process. Thereafter, lignosite, in the amount of 1%, is added to the screenings as a *binder*, and the product is pelletized to facilitate transportation and storage. The merchandise is bought and sold as screenings and is recognized as such by persons in the trade.

Plaintiff contends that item 184.47 is an *eo nomine* provision which provides for all forms of screenings including pelleted screenings. Plaintiff argues that the pelleting process does not cause the imported merchandise to lose its identity as "screenings". Plaintiff also contends that item 184.47 more specifically describes the imported pellets than does item 184.75. Plaintiff calls attention to the fact that item 184.75 contains a "not specially provided for" clause.

Defendant contends that item 184.47 is an *eo nomine* provision which is expressly limited to screenings which are ground or not ground. Defendant argues that pelleted screenings are different from ground or unground screenings since pelleting requires substantial additional processing of the screenings.

In *American Customs Brokerage Co., Inc. a/c Albers Milling Co.* v. *United States*, 76 Cust. Ct. 146, C.D. 4649 (1976), merchandise likewise described as "grain screening pellets" and also exported from Canada was held properly classified under item 184.75 as animal feeds, and ingredients therefor, not specially provided for, other, as against the importer's claim for classification of the merchandise under item 184.70 as an animal feed byproduct obtained from the milling of grains, mixed feed and mixed-feed ingredients. However, item 184.47 was not involved in the case, and the case turned on the failure of proof necessary to support classification under item 184.70. The case does, however, underscore the fact that as to grain screenings pellets which come from the same source as those at bar, namely, Pacific Elevators in British Columbia, the lignosite ingredient is present only as a *binder*.

There is no question but that the provision for "screenings" is an *eo nomine* provision. *Universal Laboratories* v. *United States*, 35 Cust. Ct. 23, C.D. 1715 (1955). The question as to whether or not the

qualifying phrase "ground or not ground" appearing at the end of the articles enumerated in item 184.47 is to be read as a *limitation* as contended for by defendant is a *question of law.*

All that can be learned from the record as to the purpose of *grinding* may by summed up in the direct testimony of Gary DeWar, director of the terminal facilities for Alberta Wheat Pool, Pacific Elevators, and Prince Rupert in the western part of British Columbia. The witness testified (R. 22):

> Q. What was the purpose of grinding the refuse screenings?—A. To blend the commodity plus the initial stage of the degermination of the weed seeds.
>
> Q. Why doesn't the grinding destroy the weed seeds?—A. It doesn't totally destroy them. I don't know why. We found in the Canadian system that we require not only the heat but the pressure to totally degerminate weed seeds.

Thus, according to the witness, *grinding* is used to partially degerminate the weed seeds from the screenings. Presumably then, if another system were to become available to accomplish *en toto* that which *grinding* can only accomplish *pro tanto*, namely total degermination of weed seeds, it is conceivable that *grinding* might well be eliminated as a step in the production of pellets. In other words, *grinding* may or may not take place. And if the descriptive term "ground or not ground" in item 184.47 is read in this light, it would appear to be a term of *extension* rather than one of *limitation*—a description of a process which may or may not take place in the production of screenings pellets.

Legislative history discloses that this language was first introduced into paragraph 731 of the Tariff Act of 1922 which read:

> Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided,* That when grains or seeds contain more than 5 per centum of any one foreign matter duitiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

The Tariff Commission reports that when the provision was introduced in H.R. 7456, it was proposed to make the *unground* articles dutiable at the rate of 75 cents per ton, and the *ground* articles dutiable at the rate of $1.50 per ton. [Summary of Tariff Information, 1921, p. 705] The Commission made the following suggestion to the Senate Finance Committee:

> *Suggested changes.*—Was it the intention in fixing the rate on screenings, etc., to make the rate higher on unground than on ground in order to discourage the importation of injurious weed seeds? If so, should not the rates be reversed? [Id., p. 706]

By adopting the language of paragraph 731 as set out above, Congress appears to have eliminated any differentiation between unground and ground screenings, and provided for uniform treatment in the dutiable status of both classes of articles. The same holds true for paragraph 731 of the Tariff Act of 1930 and item 184.47, the successor provisions to paragraph 731 of the 1922 act.

The word "unground" standing by itself would seem to imply a *restriction*, as also would the word "ground" standing by itself. But when both terms are grouped together in the same descriptive phrase, i.e., "ground or not ground", they tend to cancel out each other as having a *restrictive* significance. The same would apply to the terms "full or empty" when written in a tariff provision with reference to the condition of a container such as a drum. *Cf. Thos. Cook & Son-Wagons-Lits, Inc.* v. *United States*, 31 CCPA 32, 35, C.A.D. 245 (1943).

In the light of the meager legislative history of the phrase "ground or not ground" the court is inclined to the view that if Congress had intended the phrase to be one of *limitation*, it would have chosen more forceful words to express that intent such as "not further processed than grinding" in the manner and style with which it chose the wording in paragraph 732 [cereal foods and preparations] of the 1922 act and qualified that language with the phrase "processed further than milling". *Cf. Atkins, Kroll & Co.* v. *United States*, 47 Cust. Ct. 96, 100, C.D. 2286 (1961), *aff'd.*, 50 CCPA 62, C.A.D. 821 (1963). But as the phrase now stands, the court believes that it is merely descriptive of a process to which screenings may or may not have been subjected, Congress having been made aware of the fact that these new articles of trade were the product of various stages of *separation*, among other things. [Summary of Tariff Information, 1921, p. 706] And it must be emphasized that contrary to defendant's assertion, *grinding* does not indentify *forms* of screenings [defendant's brief, page 6] but rather identifies *advancement in condition* of the screenings. See *U.S. Vitamin Corporation* v. *United States*, 33 Cust. Ct. 269, 275, C.D. 1664 (1954), *aff'd.*, 43 CCPA 44, C.A.D. 607 (1956).

Since it is conceded that pelletizing creates a *form* of screenings, it follows that the subject merchandise is within the well-settled rule that an *eo nomine* provision covers all *forms* of an article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935). This being so, it is clear that the imported grain screenings pellets come within the purview of the *eo nomine* provision for screenings in item 184.47. And, as between item 184.47 and item 184.75 which is a residual use provision, item 184.47 more specifically describes the imported merchandise. *United States* v. *Lansen Naeve Corp.*, 44 CCPA 31, C.A.D. 632 (1957).

The court, therefore, agrees with plaintiff, and finds that plaintiff's claim for classification of the screenings under item 184.47 is well founded and must be sustained. Judgment will be entered herein accordingly.